# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER MARTINEZ TORRES,<br><br>       Petitioner,<br>vs.<br><br>MIKE EVANS, Warden of Salinas Valley State Prison,<br><br>       Defendant. | CASE NO. 06-CV-1705-H (PCL)<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION GRANTING MOTION TO DISMISS |

On August 23, 2006, petitioner Javier Martinez Torres ("Petitioner"), through his attorney, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254. (Doc. 1.) On December 7, 2006, respondent Mike Evans ("Respondent") filed a motion to dismiss on the grounds that the petition was untimely. (Doc. 9.) Petitioner did not file an opposition to Respondent's motion to dismiss. On May 30, 2007, the magistrate judge filed a report and recommendation granting the motion to dismiss. (Doc. 11.) On August 8, 2007, Petitioner filed an objection to the magistrate judge's report and recommendation. (Doc. No. 13.)

For the reasons that follow, the Court **ADOPTS** the magistrate judge's report and recommendation and **GRANTS** Respondent's motion to dismiss the Petition.

/ / /

/ / /

## **Background**

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a factual determination made by a state court is presumed to be correct. See 28 U.S.C. § 2254(e)(1); see also Parke v. Raley, 506 U.S. 20, 35-36 (1992) (holding findings of fact, and inferences properly drawn from such facts, are entitled to statutory presumption of correctness). The presumption of correctness adheres equally to state appellate and trial courts' determinations of fact. See Hayes v. Kincheloe, 784 F.2d 1434, 1437 (9th Cir. 1986). The following facts are taken from the California Court of Appeal opinion in People v. Javier Torres, No. D039935, slip op., at 2-5 (Cal. Ct. App. July 8, 2003):

> On July 22, 2000, Karla B., who was 15-years old and about two months pregnant, lived with her husband, Andy, in an Escondido apartment. The couple was having marital problems at the time. When they arrived home from work that evening, they saw that a window screen had been removed and that their home had been burglarized. A number of items were missing, including jewelry, a VCR, Andy's semiautomatic handgun and extra house keys. After Karla called the police, Escondido Police Officer Stephen Wilson responded and took a report.
>
> Sometime after the officer left, Karla entered the kitchen where she encountered Torres with a T-shirt partially covering his face and holding what later proved to be Andy's gun. Andy rushed into the kitchen carrying a bat when he heard Karla scream, but he dropped the bat when he saw Torres holding the gun. Torres ordered the couple into the bedroom at gunpoint where he had Karla tie Andy's hands with an electrical extension cord.
>
> After Andy was tied up, Torres had Karla return to the kitchen and remove her underwear; he then sexually assaulted her at gunpoint. Torres later ripped Karla's necklace off and took her watch and a ring. As he left,

Torres threatened to kill Karla and Andy if they tried to follow him. Karla freed Andy and called the police while Andy jumped out the window to go to a neighbor for help. Karla was wearing a black nightgown during the assault and afterwards her neighbor gave her a shirt to cover herself. A police officer also gave Karla a towel to wipe herself while she was in the police car. Karla's physical examination revealed injuries to her genitalia consistent with a rape at gunpoint. Karla could not identify her assailant, but she provided a description to the police from which they created a composite sketch.

About a week later, Officer Steve Braucht responded to a "hit-and-run" accident and saw Torres fleeing the scene. Officer Braucht noted that Torres fitted Karla's description of her assailant and he was wearing black work boots as described by Andy. A search of Torres revealed a magazine from a semiautomatic handgun and several rounds of ammunition. Officers later recovered a gun and a second magazine near the accident scene. Andy identified the gun as his. A search of Torres's home revealed other items stolen from Karla and Andy's apartment, including Karla's watch and necklace.

Forensic analysis revealed sperm on the vaginal swabs taken from Karla after the assault, on her nightgown, on the towel given to her by the police officer and on the shirt given to Karla by her neighbor. Further testing revealed that the sperm cells left on each of the items came from Torres, with the probability of another person having the same genetic markers as Torres being about one person in 133 billion.

Torres testified in his own defense, claiming that he knew Karla and that they had engaged in consensual intercourse on July 21, 2000, but admitting that he never told this story to police. Torres claimed he went to Karla's apartment on July 22 to again have sex, but decided to burglarize

the apartment when he saw Karla was not there. He denied committing the second burglary and the sexual assault. Torres's girlfriend, Karla Ruelas, testified that she and Torres had lived across the street from Karla's apartment at one time and that she suspected that Torres and Karla knew each other. After the DNA results came back, Torres admitted to Ruelas that he had sex with Karla on July 21, 2000.

A jury convicted Torres of all counts and found true all enhancements. After the conviction, the trial court granted defense counsel's request to continue the December 14, 2001 sentencing hearing to allow her to examine Karla's underwear and to bring a number of anticipated motions. It set the case for a status conference on February 1, 2002, to either resolve any defense motions or proceed with sentencing. At the February 1 hearing, defense counsel indicated that the underwear contained something to test and requested an order to allow the testing. The People objected to the request, indicating that a defense expert waited until the week of the hearing to examine the underwear and that no defense motions had yet been filed. The trial court again continued the sentencing hearing to March 8 to allow the defense to file a motion to allow testing of the underwear. The court contemplated hearing all defense motions on March 8 and indicated that, if it allowed testing of the underwear, it would give the defense additional time.

Torres filed a motion for new trial, to enforce discovery rules and again continue sentencing, requesting that the underwear be sent to a laboratory for DNA testing, but oral argument on the motions was continued from March 8 to March 28 because the judge was ill. On March 28 the trial court heard oral argument, denied the motions and sentenced Torres to 109 years 8 months to life. The sentence consisted of consecutive full-term sentences for the sex offenses (counts 3-6),

        consecutive sentences on the first burglary (count 1), robbery (count 7) and armed assault on Andy (count 9). The court stayed sentence under section 654 for the armed assault on Karla (count 8) and the false imprisonment (count 10) and imposed a concurrent term for the burglary conviction in count 2, indicating the burglary was for the purpose of committing the sexual assault.

(Lodgment 1, Cal. Ct. App. No. D039935, at 2-5.)

        Petitioner appealed his conviction to the California Court of Appeal, which affirmed the judgment on July 8, 2003. (Lodgment 1, at 1, 9.) Petitioner subsequently filed a habeas petition in California Superior Court, which denied the petition on August 15, 2003. (Lodgment 3.) Petitioner filed a petition for writ of habeas corpus with the California Court of Appeal on March 5, 2004 (Lodgment 4), which denied the petition on March 11, 2004. (Lodgment 5.) Petitioner filed a petition for writ of habeas corpus with the California Supreme Court on May 6, 2004 in case number S126079. (Lodgment 6.) The court denied the petition on May 18, 2005. (Lodgment 7.)

        Petitioner filed a petition for writ of habeas corpus in this Court on August 23, 2006. (Doc. No. 1.) Respondent filed a motion to dismiss, and the magistrate judge filed a report and recommendation to grant the motion on May 30, 2007. (Doc. No. 11.)

### Discussion

**I.**    **Statute of Limitations Under AEDPA**

        The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or the "Act") requires a state prisoner whose conviction has become final to seek federal habeas corpus relief within one year. See 28 U.S.C. § 2244(d)(1)(A). The Act states, "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . ." 28 U.S.C. §2244(d)(1). In computing the time period, "the day of the act, event, or

default from which the designated period of time begins to run shall not be included," although the last day of the period is included. See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (calculating AEDPA's one-year limitations period according to Fed. R. Civ. P.6(a)).

The Act tolls the 1-year limitations period under §2244(d)(1) for the "time during which a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). The time that an application for state post-conviction review is "pending" includes the period between a lower state court's decision and the filing of a notice of appeal to a higher state court. See Carey v. Saffold, 536 U.S. 214, 219-220 (2002). The statute of limitations is also tolled from the time the first state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge. See Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999). However, "AEDPA's statute of limitations is not tolled from the time a final decision is issued on direct appeal and the time the first collateral challenge is filed." Thorson v. Palmer, 479 F.3d 643, 646 (9th Cir. 2007).

The California Supreme Court denied Petitioner's habeas petition on May 18, 2005. (Lodgment 7.) A denial of a petition for a writ within the California Supreme Court's original jurisdiction, without issuance of an order to show cause, is final upon filing under Rule 8.532(b)(2)(C) of the California Rules of Court. The California Constitution provides that the "Supreme Court, courts of appeal, superior courts, and their judges have original jurisdiction in habeas corpus proceedings." Cal. Const. Art. VI, §10. The court issued a summary denial and did not issue an order to show cause in Petitioner's case. (Lodgment 7.) Therefore, the court's denial of the state petition became final upon filing. Thus, the one-year statute of limitations under the AEDPA started to run, at the latest, on May 19, 2005 and expired on May 18, 2006. See Patterson, 251 F.3d at 1247. Petitioner did not seek habeas relief in this Court until August 23, 2006, more than 90 days beyond the close of the one-year statute of limitations. Therefore, Petitioner's petition for writ of habeas corpus is time-barred

under 28 U.S.C. §2244(d)(1), unless Petitioner is entitled to equitable tolling.

## II.     Equitable Tolling

Equitable tolling compensates for "extraordinary circumstances beyond a prisoner's control" that make it "impossible to file a petition on time." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). Petitioner has the burden of proof to show extraordinary circumstances warrant equitable tolling in his case. See Gaston v. Palmer, 417 F.3d 1030, 1034 (9th Cir. 2005). An attorney's "miscalculation of the limitations period ... and…negligence in general do not constitute extraordinary circumstances sufficient to warrant equitable tolling." Miranda v. Castro, 292 F.3d 1063, 1067 (9th Cir. 2002); Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir.2001).

Petitioner argues that the fact that Spanish is his native language should entitle him to equitable tolling. A non-English-speaking petitioner seeking equitable tolling of the one-year limitations period for filing a federal habeas petition on the grounds that a language barrier prevented his timely filing must, at a minimum, demonstrate that during the running of the time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel, or other source. See Mendoza v. Carey, 449 F.3d 1065, 1070 (9th Cir. 2006).  Here, Petitioner does not claim he made sufficient efforts to procure legal materials in Spanish or translation assistance from any source. Therefore, the Court concludes that Petitioner has failed to meet the requirements to enable him to claim equitable tolling of the statutory period.

In addition, the Court finds the rest of Petitioner's objections to be without merit. The Court notes that Petitioner has not cited any case to indicate a retroactive application of Cunningham v. California, 127 S. Ct. 856 (2007), to cases on habeas review or that he preserved those issues for habeas review.  Accordingly, the Court concludes that Petitioner is not entitled to equitable tolling of the statute of limitations period, and therefore grants Respondent's motion to dismiss.

/ / /

## **Conclusion**

For the above stated reasons, the Court **ADOPTS** the magistrate judge's report and recommendation and **GRANTS** Respondent's motion to dismiss the Petition.

IT IS SO ORDERED.

DATED: August 15, 2007

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:
All parties of record.